**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Anna Bible, Civil No. 00-323 (DWF/RLE)

Plaintiff,

v.

Allied Interstate, Inc., a Minnesota corporation,

Defendant;

**MEMORANDUM OPINION AND ORDER**

AND

Caroline Bible, Civil No. 00-324 (DWF/RLE)

Plaintiff,

v.

Allied Interstate, Inc., a Minnesota corporation,

Defendant.

---

Eric Crandall, Esq., Crandall Law Office, 275 South Third Street, Suite 205, Stillwater, MN 55082, appeared on behalf of Plaintiffs.

Michael Brutlag, Esq., Brutlag Hartmann & Okoneski, 1100 Pillsbury Center, 200 Sixth Street South, Minneapolis, MN 55402, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matters came on for hearing before the undersigned United States District Judge on May 11, 2001, pursuant to the Plaintiffs' Motions for Partial Summary Judgment and Defendant's Motions for Summary Judgment. In the Complaints, Plaintiffs allege various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S. C. § 1692,

FILED MAY 14 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD MAY 14 2001
DEPUTY CLERK

*et seq*. For the reasons set forth below, Plaintiffs' motions are denied and Defendant's motions are granted.

**Background**

Plaintiff Anna Bible was a customer of Sprint/United Telephone ("Sprint"). As of August 28, 1998, Anna Bible owed Sprint $905.50. Sprint turned the debt over to Defendant Allied Interstate, Inc. ("Allied") for collection. The account information provided to Allied by Sprint indicated that the debtors were Anna Bible and Caroline Bible (Anna Bible's mother), both with the same address and telephone number.

Allied mailed three notice letters to Anna Bible: one on August 29, 1998; one on October 1, 1998; and one on January 10, 1999. Plaintiffs' recitation of the facts references only the January 10 letter, but Plaintiffs admit that this letter complied with the FDCPA and there are no allegations regarding the written collection notices.

On February 11, 1999, an employee of Allied named Chris Lawrence attempted to reach Anna and Caroline Bible by phone. Anna Bible's brother, Paul Bible, answered the phone. Lawrence first asked for Anna Bible and was told that Anna did not reside at that address. Lawrence then asked to speak to Caroline Bible. Paul Bible informed Lawrence that Caroline Bible is deaf and cannot speak on the phone. According to Lawrence, Paul Bible represented that he handled Caroline Bible's business matters. Plaintiffs have not denied that Paul Bible made such a representation to Lawrence.[1]

---

[1] Allied served written discovery, including a Request for Admissions, on Plaintiffs on January 12, 2001. Allied sent a letter to Plaintiffs' counsel on March 23, 2001, requesting a response to that written discovery, including the Request for Admissions. As of May 3, 2001, Plaintiffs had not responded to Allied's written discovery requests. The parties did not stipulate to nor did the Court order an extension of the time to respond. Thus, on May 3, 2001, Allied (continued...)

Lawrence informed Paul Bible that Anna and Caroline Bible were jointly responsible for a $905.50 debt to Sprint. Paul Bible hung up and asked his mother about the alleged debt. Caroline Bible denied any obligation on the debt. Paul Bible called Lawrence back and informed her that Caroline Bible had not signed any contract with Sprint. Lawrence replied that Caroline did not need to have signed anything to be responsible for the debt and that Caroline and Anna were both listed as obligors on the debt.

The Complaints allege further that, during one of the phone conversations between Paul Bible and Lawrence, Lawrence told Paul Bible that Anna Bible had illegally tapped into Caroline Bible's phone. However, none of the statements or affidavits of any of the parties involved support this proposition. Anna, Caroline, and Paul Bible fail to mention any such statement by Lawrence in any of the affidavits or statements submitted to the record. Lawrence mentions the allegation in her affidavit, but only to deny making any such statement.

Later in the day on February 11, 1999, Anna Bible called Allied to inform them that her mother should not be listed as an obligor. Lawrence informed Anna Bible that Allied could not

---

[1](...continued)
moved the Court to deem Plaintiffs' lack of response as an admission, pursuant to Rule 36 of the Federal Rules of Civil Procedure. One of Allied's requests is for an admission that Paul Bible represented himself as the administrator of his mother's affairs.

On May 10, 2001, counsel for Plaintiffs filed a letter with the Court stating that Plaintiffs served responses to the Request for Admissions on Allied on May 3. Plaintiffs' counsel suggests that Allied was somehow disingenuous in filing its Rule 36 Motion. The Court notes, however, that Allied's submissions were all true at the time they were filed; it would have been negligent of Allied's counsel to *not* make a motion under Rule 36 after three and a half months of silence.

Although Plaintiffs have indicated to the Court that they have responded to the written discovery requests, they have not provided a copy of those responses to the Court and have not indicated, by affidavit, response, or argument, that Lawrence's statement that Paul Bible represented himself as the administrator of his mother's business affairs is untrue or inaccurate. Thus, even without deeming Plaintiffs' silence as an admission, there is nothing in the record to refute Lawrence's statement about Paul Bible's representations to her.

remove anyone's name from the account and that Anna Bible should call Sprint about the matter. Still later that afternoon, a representative from Sprint called Allied to inform them that the listing of Caroline was a mistake; Caroline Bible's name was supposed to be listed for mailing purposes only, but she had inadvertently been listed as a co-obligor.

Plaintiffs brought separate, now-consolidated, actions alleging a variety of claims under the FDCPA. Essentially, however, Plaintiffs have alleged four "wrongs" committed by Allied: (1) Allied communicated information about Anna Bible's debt and Caroline Bible's alleged debt to a third party (Paul Bible) in violation of § 1692b and § 1692c(b); (2) Allied threatened to reveal false credit information to a third party in violation of § 1692e(8); (3) Allied misrepresented the status of the debt, specifically by alleging incorrectly that Caroline Bible was a co-obligor, in violation of § 1692e(2)(A) and § 1692e(10); and (4) Allied falsely represented that Anna Bible committed a criminal act in violation of § 1692e(7).

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Claims Pursuant to 15 U.S.C. §§ 1692e(7) and 1692e(8)**

There is absolutely no evidence in the record to support the allegation in the Complaint that Allied accused Anna Bible of illegally tapping into Caroline Bible's phone line. A party responding to a motion for summary judgment may not rely upon the allegations in the complaint, but must create a record of actual evidence to support those allegations. None of the affidavits or statements in the record contain an affirmative statement that Lawrence or any other representative of Allied ever suggested that Anna Bible committed a crime. In fact, counsel for Plaintiffs stated during oral argument that Paul Bible has now refused to sign an affidavit containing an allegation that Lawrence accused Anna Bible of committing a crime. Accordingly, Allied is entitled to summary judgment on Plaintiffs' claims pursuant to 15 U.S.C. § 1692c(7).

Similarly, there is no evidence in the record to suggest that Lawrence or any other representative of Allied threatened to disclose false information about either Plaintiff to a third party. Accordingly, Allied is entitled to summary judgment on Plaintiffs' claims pursuant to 15 U.S.C. § 1692e(8).

**3. False Representation About the Status of a Debt**

Plaintiffs allege that Allied violated §§ 1692e(2)(A), 1692e(10), and possibly § 692e(8) by misrepresenting that Caroline Bible was a co-obligor on Anna Bible's debt. First, Plaintiffs have not alleged that Allied ever misrepresented Anna Bible's obligation; thus, at the outset, the Court notes that Anna Bible has not articulated a claim under any of the referenced provisions of the FDCPA.

Allied *did* inaccurately represent Caroline Bible's obligation; Allied did represent to Caroline Bible and Anna Bible, through Paul Bible, that Caroline was responsible for a debt when, in fact, Caroline Bible was not responsible. Caroline Bible could, then, state a claim under the referenced provisions of the FDCPA. However, Allied has asserted the affirmative defense of bona fide error. Section 1692k(c) of the FDCPA states that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Allied has alleged, and Plaintiffs do not contest, that Allied represented that Caroline Bible was an obligor on the debt because the information provided to Allied by Sprint indicated that Caroline was responsible for the debt. Allied has submitted the file received from Sprint, and the file does not distinguish between the obligations of Anna and Caroline Bible. Plaintiffs have offered no evidence to suggest that Allied's misrepresentation was anything other than a bona fide error.[2]

---

[2] At oral argument, Plaintiffs pointed out, for the first time, two pieces of (continued...)

Moreover, the Court concludes that Allied maintained "procedures reasonably adapted to avoid . . . such error[s]." Allied has submitted affidavits explaining the lengths to which Allied goes to comply with the FDCPA and explaining that Allied has no way of obtaining verification of an individual's obligation independent of the files submitted to Allied by the obligee (here, Sprint). Plaintiffs have offered no evidence or argument to dispute the adequacy of Allied's procedures. Accordingly, summary judgment is proper. *See Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992) (upholding a grant of summary judgment premised on the bona fide error defense); *Danielson v. Hicks*, 1995 WL 767290 (D. Minn. 1995) (granting summary judgment based on the bona fide error defense).

**4. Communication to a Third Party**

Plaintiffs allege violations of § 1692c(b) based on Allied's communication of debt information to Paul Bible. Section 1692c(b) states that, except under very limited circumstances, "without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person

---

[2](...continued)
"evidence" indicating that Allied knew or should have known that Caroline Bible was not an obligor on the debt. Counsel for Plaintiffs either misunderstands or is misrepresenting the evidence in the record. First, Plaintiffs note that Exhibit 2 to the Affidavit of Chris Lawrence, a document entitled "Debtor Profile" lists Anna Bible as the sole debtor. However, Exhibit 2 is one of Allied's own records, generated on April 14, 2000. As of April 14, 2000, Allied knew that Caroline had been included in the file by mistake. The document says nothing about what Allied knew or should have known at the time Lawrence called the Bible residence and spoke with Paul Bible. Similarly, Plaintiffs identify a notation in that same exhibit which states that "CINDY FROM SPRINT CTO SD MOM'S NAME WAS ADDED TO BE IN CARE OF FOR MAIL ONLY .. MOM CAROLINE NOT RESPONSIBLE SD TO RMV HER NAME..." (abbreviations and capitalization in the original). Again, the record clearly indicates that "Cindy from Sprint" called at 4:04 p.m. on February 11, 1999. The last communication Lawrence had with Paul Bible was at 9:34 a.m. that same day. In other words, "Cindy from Sprint" did not notify Allied of the error until *after* Allied's alleged wrong-doing.

other than the consumer . . . ." However, the statute goes on to define "consumer," for purposes of the prohibition on third-party communications, as including the consumer's administrator. In this case, the undisputed evidence in the record indicates that Paul Bible represented himself as the administrator of Caroline Bible's affairs[3]; he further represented that Caroline Bible was incapable of communicating by phone, and thus Caroline Bible was incapable of verifying or refuting Paul Bible's status as her administrator. Indeed, Plaintiffs do not refute Paul Bible's contention that he administers Caroline Bible's affairs. Thus, Allied's statements to Paul Bible were, under the terms of the statute, the equivalent of statements to Caroline Bible.

Allied could not have communicated to Caroline Bible about her own alleged obligation without referencing Anna Bible's co-obligation. Counsel for Plaintiffs admits that a debt collector can speak to joint-obligors each about the other's obligations. Because Paul Bible effectively stood in the shoes of Caroline Bible and because Allied legitimately (if wrongly) believed that Anna and Caroline Bible were joint-obligors, Allied was justified in speaking to Paul Bible about the existence of Anna Bible's debt. Based on these facts, the Court finds that Plaintiffs have failed to allege a wrongful communication to a third party in violation of any provision of the FDCPA.

---

[3] Plaintiffs cite a case, *Fava v. RRI, Inc.*, 1997 WL 205336 (N.D.N.Y. 1997), which is factually similar. In *Fava*, a debt collector engaged in numerous contacts with the debtor's father; the father had represented to the debt collector that he had power of attorney for his daughter. At the outset, the Court notes that *Fava* is an unpublished opinion from another jurisdiction and thus has no precedential weight. Moreover, the *Fava* court only considered whether the alleged power of attorney constituted a written grant of permission pursuant to § 1692c(b); the court did not address the question of whether the alleged power of attorney rendered the father a "consumer" as defined in § 1692c(d). Perhaps, unlike this case, there was evidence that the father's representations were false. Or perhaps neither the parties nor the court considered the implications of § 1692c(d). In any event, the *Fava* court did not address the question before this Court.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motions for Partial Summary Judgment (Civ. No. 00-323, Doc. No. 14) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Civ. No. 00-323, Doc. No. 20) is **GRANTED**; and

3. The **COMPLAINTS** in Civ. No. 00-323 and Civ. No. 00-324 are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: May 14, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: MAY 14 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.